UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSHUA MOORE,

       Plaintiff,

v.                                         Case No.  8:13-cv-1569-T-24 AEP

GEICO GENERAL INSURANCE
COMPANY,

       Defendant.

_____/

**ORDER**

This cause comes before the Court on the parties' motions in limine (Doc. No. 72, 73, 74, 75, 76) and responses thereto (Doc. No. 80, 81, 82, 83, 84).  Accordingly, the Court will address each motion.

**I.  Background**

This is a lawsuit in which Plaintiff Joshua Moore claims that Defendant GEICO General Insurance Company ("GEICO") acted in bad faith by failing to settle bodily injury claims asserted against him.  Moore was an insured driver under his parents' automobile insurance policy issued by GEICO, which provided bodily injury ("BI") limits of $10,000 per person/$20,000 per occurrence.

On May 11, 2010, Plaintiff was involved in a multi-car accident.  Plaintiff was driving northbound on U.S. Highway 98 when another driver, Richard Waters, cut him off in traffic and the two drivers engaged in hand gestures.  Waters then swerved his truck into the side of Plaintiff's truck, and Plaintiff lost control of his truck, crossed into the southbound lanes, and hit Amy Krupp's vehicle nearly head on.  Krupp's vehicle was run off the road and rolled over in a

ditch.  Krupp and her minor son ("AO") were severely injured, and they were taken to two different hospitals.  Plaintiff was also injured and was hospitalized.

On May 12, 2010, Plaintiff's mother reported the accident to GEICO.  On Wednesday, May 19, 2010, GEICO authorized the tender of the full $20,000 BI limit to Krupp and AO due to their extensive injuries and hospitalization.  GEICO later learned that Krupp had died from her injuries on May 20, 2010.

On May 28, 2010, the claimants'[1] attorney, Lance Holden, Esq., stated that in order to settle their claims, any release would have to comply with their directives and that all insureds would have to provide affidavits demonstrating that the only coverage that governed this claim was GEICO's insurance policy.  GEICO attempted to comply with the claimants' directives but failed to strictly comply.  As a result, on June 18, 2010, the claimants rejected GEICO's offer to settle the bodily injury claims.

On July 15, 2010, GEICO once again offered the full $20,000 BI limit to settle the bodily injury claims.  The claimants did not accept GEICO's offer to settle the bodily injury claims, and they filed a lawsuit against Plaintiff and his parents on August 9, 2010.  Plaintiff's parents eventually settled the claims against them.

After the claimants filed the underlying car accident lawsuit, Plaintiff's attorney, Kim Wells, Esq., sent a letter to Holden setting forth a proposal.  Specifically, Wells proposed that the underlying car accident litigation be stayed and that the parties enter into a

Cunningham agreement, which would allow a bad faith claim against GEICO to be tried prior to

---

[1]The claimants are Gregory R. Kyser, as Personal Representative of the Estate of Amy Suzanne Krupp, and Brian Orr, as father and guardian of AO.

the underlying car accident litigation being tried.  Further, Wells proposed that if GEICO won

the bad faith litigation, the bodily injury claims of Krupp and AO would be completely satisfied

by the payment of the $20,000 BI limit (which would protect Plaintiff from the possibility of an

excess judgment).  If GEICO lost the bad faith litigation, the underlying car accident case would

then go forward, and GEICO would be liable for any judgment.  Holden agreed to the proposal,

but GEICO did not.

The underlying car accident litigation went to trial, and on May 3, 2013, a judgment in

excess of $4 million was entered against Plaintiff.  On June 14, 2013, Plaintiff filed the instant

bad faith lawsuit against GEICO.

## II.  Plaintiff's Motions in Limine

Plaintiff filed four motions in limine.  Accordingly, the Court will address each motion.

### A.  Actions and Motives of Attorney Lance Holden (Doc. No. 73)

Plaintiff moves to exclude evidence regarding Holden's conduct and motives.  Plaintiff

argues that the focus of bad faith litigation is on the conduct of the insurer, not on the claimants'

attorney, and therefore, such evidence would confuse the jury and be highly prejudicial.

Furthermore, Plaintiff argues that any attempt to provide expert testimony regarding Holden's

motives or intent would be improper, as the experts are not mind readers.

GEICO responds that evidence of Holden's conduct is relevant to the issue of whether

GEICO had a realistic possibility of settlement under the totality of the circumstances.

Furthermore, while GEICO does not intend to offer expert testimony regarding Holden's state of

mind, GEICO argues that expert testimony based on Holden's conduct is relevant and admissible

to show that GEICO did not have a realistic possibility of settlement under the totality of the

circumstances.

The Court agrees with GEICO that Plaintiff's motion should be denied to the extent that Plaintiff seeks to preclude evidence regarding Holden's conduct.  "[A]lthough a bad faith claim derives from and emphasizes the duty of the insurer to the insured, the conduct of a claimant and the claimant's attorney is relevant to determining the 'realistic possibility of settlement." Cardenas v. GEICO Cas. Co., 760 F. Supp. 2d 1305, 1309 (M.D. Fla. 2011)(citation omitted).

However, the Court agrees that GEICO cannot offer expert testimony regarding Holden's state of mind, but the experts can testify about their opinions based on Holden's conduct. See Mendez v. Unitrin Direct Property & Cas. Co., 2007 WL 2696795, at *2 (M.D. Fla. Sept. 12, 2007)(allowing expert opinion regarding the conduct of the claimant and his attorney for the purpose of showing an unwillingness to settle); Hayas v. GEICO General Ins. Co., 2014 WL 5590808, at *4 (M.D. Fla. Nov. 3, 2014)(same).

Accordingly, this motion is **GRANTED** to the extent that GEICO cannot offer expert testimony regarding Holden's state of mind; otherwise, the motion is **DENIED**.

**B.  Jury Verdicts in Other Cases (Doc. No. 74)**

Next, Plaintiff moves to exclude GEICO's expert from testifying regarding the number of other cases in which juries have agreed with his expert opinion that the insurance company did not act in bad faith.  Plaintiff argues that such evidence is not relevant to the issue of whether GEICO acted in bad faith in this case.

GEICO responds that it has no intention of eliciting such testimony unless Plaintiff attacks GEICO's expert's credibility and truthfulness and/or suggests that the expert is biased. Thus, argues GEICO, it only intends to elicit such testimony to rehabilitate its expert, if

4

necessary.

Upon consideration, the Court concludes that such "rehabilitation" evidence would pose a danger of confusing the jury regarding the pertinent issue in this case—whether GEICO acted in bad faith in this case.  Furthermore, such "rehabilitation" evidence presents a danger of unfair prejudice to Plaintiff.  Accordingly, the Court **GRANTS** this motion.  See GEICO General Ins. Co. v. Gould, 8:12-cv-1066-T-MSS-TBM (M.D. Fla. Sept. 15, 2015)(attached at Doc. No. 82-2)(granting similar motion in limine).

### C. "Set up" Defense (Doc. No. 75)

Next, Plaintiff moves to exclude GEICO's expected defense that it was "set up" by the claimants' attorney, Holden, who crafted his settlement demand in such a way as to create a bad faith claim.  Plaintiff further argues that the focus of this bad faith case is GEICO's conduct and that any opinion regarding Holden's state of mind would be pure speculation.

GEICO responds that it is not asserting a "set up" defense.  However, it does intend to present evidence that there was not a realistic opportunity for GEICO to settle the bodily injury claims based on Holden's and the claimants' actions, inactions, and statements.

The Court agrees with GEICO that this motion should be denied to the extent that GEICO may present evidence that there was no realistic opportunity for GEICO to settle the bodily injury claims.  Evidence of Holden's and the claimants' actions, inactions, and statements is relevant to the totality of the circumstances that the jury must consider.  As previously stated with respect to Plaintiff's first motion in limine, the Court will not allow any evidence of Holden's state of mind.  However, if GEICO calls Holden, GEICO may question Holden directly about his state of mind.  Furthermore, the Court will preclude GEICO from offering evidence or

argument that Holden "set up" GEICO.

Accordingly, the motion is **GRANTED** to the extent that the Court will not allow any evidence of Holden's state of mind (unless GEICO questions Holden directly about his state of mind) and will preclude GEICO from offering evidence or argument that Holden "set up" GEICO; otherwise, the motion is **DENIED**.

### D.  Re-Litigation of Underlying Action (Doc. No. 76)

Next, Plaintiff moves to preclude GEICO from introducing evidence or argument on matters that were previously adjudicated in the underlying car accident litigation, "including issues of liability, comparative negligence, causation, and the Florida No-Fault threshold, without first requesting and obtaining this Court's permission (outside the presence and hearing of the jury)."  (Doc. No. 76).

GEICO responds that the motion is vague and overly broad and that GEICO does not intend to re-litigate the underlying car accident lawsuit.  GEICO points out that Plaintiff has not identified any specific evidence that he believes should be excluded.  As a result, GEICO argues that any objections regarding any specific evidence or argument should be made at trial where the Court can address such objections in context.

The Court agrees with GEICO that Plaintiff's motion is so vague and broad that the Court cannot grant the relief he seeks without more information.  Therefore, the Court **DENIES WITHOUT PREJUDICE** this motion.

### III.  GEICO's Motion in Limine (Doc. No. 72)

GEICO filed a motion in limine addressing six issues.  Accordingly, the Court will address each issue.

6

## A.  Lay Witness Testimony Regarding the Standard for Bad Faith

GEICO moves to preclude Plaintiff from eliciting lay witness testimony regarding the standard for bad faith under Florida law.  Specifically, GEICO anticipates that Plaintiff will pose such questions to GEICO's adjusters.  GEICO argues that such would be unfairly prejudicial, because it invades the purview of the Court, which is tasked with instructing the jury on the law. Plaintiff responds that the adjusters' jobs require an understanding and application of the law, and their knowledge of such is something for the jury to consider under the totality of the circumstances.

The Court agrees with GEICO that such testimony could be unfairly prejudicial, as it is the Court's duty to instruct the jury on the standard for bad faith under Florida law. Furthermore, the Court questions the relevance of such testimony by the adjustors, because knowledge of the standard for bad faith does not equate to actually acting in good faith. Conversely, an adjustor may not know the standard for bad faith but may still end up acting in good faith.  Accordingly, the Court **GRANTS** GEICO's motion on this issue.

## B.  Willingness to Settle Based on Settlement of Property Damage Claim

Next, GEICO moves to exclude evidence and argument that GEICO could have settled the *bodily injury* claims based on the fact that the claimants settled their *property damage* claim against Waters and his insurance company, Peak Property and Casualty Insurance ("Peak"). GEICO anticipates that Plaintiff will argue that the claimants were willing to settle their bodily injury claims against Plaintiff because: (1) the claimants sent an almost identically written settlement offer to Peak that it sent to GEICO on May 28, 2010; and (2) the claimants and Peak settled the property damage claim against Waters.

Plaintiff responds that because the jurors must consider the totality of the circumstances, they should be allowed to consider the fact that Peak settled the property damage claim against Waters.  Plaintiff argues that the claimants' settlement with Peak shows that they were willing to settle their bodily injury claims against Plaintiff.

GEICO argues that the property damage claim and bodily injury claims are too different for the Peak settlement to have any relevance to the claimants' willingness to settle their bodily injury claims.  The property damage claim was never alleged to be greater than the combination of Waters' and Plaintiff's property damage policy limits.  However, the value of the bodily injury claims far exceeded Plaintiff's BI limits.

While the Court agrees that the claimants' willingness to settle the property damage claim may be quite different from their willingness to settle their large bodily injury claims, the Court cannot say that evidence of the property damage settlement is completely irrelevant or unfairly prejudicial.  GEICO is free to vigorously cross-examine witnesses about the difference between such claims at trial.  Accordingly, the Court **DENIES** GEICO's motion on this issue.

### C.  Personal Opinions of Insurance Companies and GEICO's Advertising Campaigns

Next, GEICO moves to exclude any evidence and argument regarding personal opinions about insurance companies, in general, and GEICO, specifically.  It also moves to exclude any evidence and argument regarding GEICO's advertising campaigns.  GEICO argues that such would be irrelevant and unfairly prejudicial.

Plaintiff agrees that he will not mention anything about GEICO's advertising campaigns and that evidence and argument regarding personal opinions about insurance companies, in general, is not relevant.  However, Plaintiff argues that his expert should be permitted to testify

8

as to industry standards and whether GEICO complied with such standards in this case.

The Court agrees with Plaintiff that his intended expert testimony regarding industry standards and whether GEICO complied with such standards in this case is relevant.  Therefore, the Court **GRANTS** GEICO's motion to exclude evidence and argument regarding its advertising campaigns and regarding personal opinions about insurance companies in general. The Court **DENIES** the motion to the extent that Plaintiff's expert may testify as to industry standards and whether GEICO complied with such standards in this case.

### D.  Reference to Proposed Cunningham Agreement

Next GEICO seeks to exclude evidence and argument that it acted in bad faith by failing to enter into a Cunningham agreement.  GEICO expects that Plaintiff will attempt to elicit expert testimony that, had GEICO agreed to the proposed Cunningham agreement, GEICO would have protected Plaintiff from an excess judgment.  GEICO argues that such evidence is irrelevant and unfairly prejudicial, because Florida law does not impose a duty on an insurer to enter into a Cunningham agreement.  See Kropilak v. 21st Century Ins. Co., 806 F.3d 1062, 1068 (11th Cir. 2015)(stating that "Florida law is clear that an insurer has no duty to enter into a Cunningham agreement"); Keifer v. Government Employees Ins. Co., 2002 WL 34924509, at *3 (11th Cir. 2002)(stating that the court was aware of no Florida precedent "that suggests that an insurer must enter into [a Cunningham] agreement to avoid claims of bad faith"); Berges v. Infinity Ins. Co., 896 So. 2d 665, 671 n.1 (Fla. 2004).  Plaintiff responds that because the jurors must consider the totality of the circumstances, they should be allowed to consider the fact that GEICO failed to enter into a Cunningham agreement, which would have protected Plaintiff from an excess judgment.

The Court agrees with GEICO that such evidence is irrelevant and unfairly prejudicial. As such, the Court **GRANTS** GEICO's motion on this issue.

### E.  Current Impact of AO's Injuries and Krupp's Death

Next, GEICO moves to exclude evidence and argument regarding the extent of AO's injuries, his ongoing treatment, his ongoing medical problems and limitations, and the impact that those injuries have had on his life and on his family.  Likewise, GEICO moves to exclude evidence and argument regarding the death of Krupp and the impact that her death has had on her family.  GEICO argues that such evidence is irrelevant, unfairly prejudicial, and would be raised only to curry sympathy from the jury.

Plaintiff responds that he will not introduce evidence of ongoing damages, because once the final judgment was entered in the underlying car accident lawsuit, the amount of damages was determined.  However, Plaintiff argues that to the extent that GEICO had knowledge during its claims handling of the extent of AO's injuries, Krupp's death, AO's need for ongoing treatment, and the impact of AO's injuries and Krupp's death on their family, such evidence is relevant to GEICO's valuation of the claimants' bodily injury claims and to the issue of whether GEICO acted in bad faith by failing to settle their bodily injury claims.

While the Court agrees with Plaintiff that such evidence is relevant to GEICO's valuation of the claimants' bodily injury claims, there can be no dispute that one week after the car accident, GEICO authorized the tender of the full $20,000 BI limit to Krupp and AO due to their extensive injuries and hospitalization.  Thus, the probative value of all of this evidence is outweighed by the danger of unfair prejudice to GEICO.  Such evidence may cause the jury to sympathize with the claimants rather than to focus on whether GEICO acted in bad faith.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** this motion by limiting the evidence on this issue in order to balance the probative value and the danger of unfair prejudice.  Plaintiff can offer evidence regarding the extent of AO's injuries at the time of GEICO's claims handling and evidence that Krupp died.  However, the Court will not allow evidence regarding the impact of AO's injuries and Krupp's death on their family, as such will only serve to unfairly curry the jury's sympathy.

### F.  GEICO's Claims Manuals and Policies

Next, GEICO moves to exclude evidence of its clams manuals, code of conduct, and training materials.  GEICO believes that such evidence is irrelevant and will confuse the jury.  GEICO points out that it is free to structure its own policies in a manner that goes above and beyond what is required in Florida, and in such a situation, non-compliance will not necessarily equate to bad faith.  Plaintiff responds that such evidence is relevant and that he should be permitted to proffer testimony in support of the alleged violations for the Court to consider before making a blanket ruling excluding such evidence.

Upon consideration, the Court determines that this motion should be **GRANTED**.  As previously stated by this Court in a different case:

> The Court agrees with GEICO that reference to such materials should be excluded as irrelevant or redundant.  Either such evidence will be irrelevant, because GEICO structured its company guidelines in a manner that goes above and beyond what is required under Florida law. Or, alternatively, such evidence will be redundant because evidence of what is required under Florida law would need to be presented in order to determine whether GEICO's policies and procedures are consistent with the requirements of Florida law.

Hines v. GEICO Indemnity Co., 2016 WL 688050, at *3 (M.D. Fla. Feb. 19, 2016).  In a footnote, this Court stated, "If, however, Plaintiff has a purpose for questioning about these

materials that will lead to relevant testimony that is not redundant, he is free to ask the Court to reconsider its ruling at trial." Id. at *3 n.1.

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     Plaintiff's Motion in Limine Regarding the Actions and Motives of Attorney Lance Holden (Doc. No. 73) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** to the extent that GEICO cannot offer expert testimony regarding Holden's state of mind; otherwise, the motion is **DENIED**.

(2)     Plaintiff's Motion in Limine Regarding Jury Verdicts in Other Cases (Doc. No. 74) is **GRANTED**.

(3)     Plaintiff's Motion in Limine Regarding GEICO's "Set up" Defense (Doc. No. 75) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** to the extent that the Court will not allow any evidence of Holden's state of mind (unless GEICO questions Holden directly about his state of mind) and will preclude GEICO from offering evidence or argument that Holden "set up" GEICO; otherwise, the motion is **DENIED**.

(4)     Plaintiff's Motion in Limine Regarding Re-Litigation of Underlying Action (Doc. No. 76) is **DENIED WITHOUT PREJUDICE.**

(5)     GEICO's Motion in Limine (Doc. No. 72) is **GRANTED IN PART AND DENIED IN PART**:

(a)     The motion is **GRANTED** to the extent that: (a) Plaintiff may not elicit lay witness testimony regarding the standard for bad faith under Florida

law; (b) the Court excludes evidence and argument regarding GEICO's advertising campaigns and personal opinions about insurance companies in general; (c) the Court excludes evidence and argument that GEICO acted in bad faith by failing to enter into a <u>Cunningham</u> agreement; (d) the Court will not allow evidence regarding the impact of AO's injuries and Krupp's death on their family; and (e) the Court excludes evidence of GEICO's clams manuals, code of conduct, and training materials.

(b)     The motion is **DENIED** to the extent that: (a) Plaintiff may offer evidence and argument that GEICO could have settled the bodily injury claims based on the fact that the claimants settled their property damage claim against Waters and his insurance company, Peak; (b) Plaintiff's expert may testify as to industry standards and whether GEICO complied with such standards in this case; and (c) Plaintiff can offer evidence regarding the extent of AO's injuries at the time of GEICO's claims handling and evidence that Krupp died.

**DONE AND ORDERED** at Tampa, Florida, this 30th day of September, 2016.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge