UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSHUA MOORE,

    Plaintiff,

v.                                          Case No.  8:13-cv-1569-T-24 AEP

GEICO GENERAL INSURANCE
COMPANY,

    Defendant.
_____/

**ORDER**

This cause comes before the Court on two motions: (1) GEICO's Renewed Motion for Judgment as a Matter of Law (Doc. No. 158), which Plaintiff opposes (Doc. No. 162); and (2) GEICO's Motion for a New Trial (Doc. No. 157), which Plaintiff opposes[1] (Doc. No. 159).  As explained below, GEICO's Renewed Motion for Judgment as a Matter of Law is denied, and GEICO's Motion for a New Trial is granted.

**I.  Background**

This is a lawsuit in which Plaintiff Joshua Moore claims that Defendant GEICO General Insurance Company ("GEICO") acted in bad faith by failing to settle a bodily injury claim asserted against him.  Plaintiff was an insured driver under his parents' automobile insurance policy issued by GEICO, which provided bodily injury ("BI") limits of $10,000 per person/$20,000 per occurrence.

---

[1]GEICO seeks leave to file a reply to Plaintiff's response to its motion for a new trial. (Doc. No. 161).  However, a reply is not necessary, and as such, GEICO's motion for leave to file a reply is denied.

On May 11, 2010, Plaintiff was involved in a multi-car accident.  Plaintiff was driving northbound on U.S. Highway 98 when another driver, Richard Waters, cut him off in traffic and the two drivers engaged in hand gestures.  Waters then swerved his truck into the side of Plaintiff's truck, and Plaintiff lost control of his truck, crossed into the southbound lanes, and hit Amy Krupp's vehicle nearly head on.  Krupp and her minor son ("AO") were severely injured, and Krupp later died.

Gregory Kyser, as Personal Representative of the Estate of Amy Suzanne Krupp, retained Lance Holden to represent the Estate for the bodily injury claim against Plaintiff.  GEICO made several attempts to pay the claimants[2] Plaintiff's BI policy limits, but a settlement was not reached, and he claimants obtained a $4,427,695.30 judgment against Plaintiff in state court.

This case went to trial on November 28, 2016.  The jury found that GEICO acted in bad faith in failing to settle the bodily injury claim against Plaintiff.  (Doc. No. 143).  Thereafter, GEICO filed the instant motions for judgment as a matter of law and for a new trial.

## II.  Motion for Judgment as a Matter of Law

GEICO moves for a judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(b).  In analyzing this motion, the following standard of review applies:

> [This Court] look[s] at the record evidence, drawing all inferences in favor of the nonmoving party.  Judgment as a matter of law for the defendant is proper when there is insufficient evidence to prove an element of the claim, which means that no jury reasonably could have reached a verdict for the plaintiff on that claim.  As such, this court must independently determine whether the facts and inferences point so overwhelmingly in favor of the movant that reasonable people could not arrive at a contrary verdict.

---

[2]The claimants are Gregory Kyser, on behalf of Krupp's Estate, and Brian Orr, as father and guardian of AO.

Dillon v. Axxsys Int'l, Inc., 185 Fed. Appx. 823, 826–27 (11th Cir. 2006)(internal citations omitted).

In support of this motion, GEICO argues that the evidence before the jury undisputably showed that GEICO did not act in bad faith. GEICO contends that the sole basis for the jury's finding that it acted in bad faith was GEICO's inclusion in its release of the word "agents" and that the claimants would be releasing Plaintiff's "agents." According to Plaintiff's evidence at trial, the claimants refused to accept the release because they believed that such language was a release of their claims against GEICO (as Plaintiff's agent) if GEICO misrepresented Plaintiff's insurance coverage. GEICO argues that this is not a valid basis for a jury to find bad faith for three reasons: First, GEICO sent the claimants' attorney, Holden, the proposed release four days prior to the demand deadline set by Holden in order for Holden to determine if the release was acceptable. Second, as a matter of law, GEICO was not Plaintiff's agent. Third, even if GEICO could be considered Plaintiff's agent, the claimants had no claim against GEICO, and as such, there was no claim against GEICO actually released by that language.

In response, Plaintiff argues that bad faith is governed by the totality of the circumstances. As such, Plaintiff contends that GEICO's bad faith consisted not only of the problem with the release, but also evidence of GEICO's bad faith included providing incomprehensible affidavits, failing to send Plaintiff a copy of the settlement offer, and failing to inform him of the time deadline.

The evidence before the jury was that GEICO attempted to pay the BI policy limit several times, sent a proposed release to Holden four days before the demand deadline, and was clearly open to making changes to the release prior to the demand deadline. The evidence was also that

3

Holden made a deliberate choice not to return GEICO's phone calls or object to the inclusion of the word "agent" in the release prior to the arbitrary deadline that Holden set for a response to his settlement demand. (Doc. No. 159-2, p. 113–90). The evidence at trial was substantially the same as the evidence presented to the Court at summary judgment. GEICO's handling of the claim seems to this Court now as it did then to be sufficient, as a matter of law, to avoid a bad faith finding against it. However, the Eleventh Circuit reversed this Court's conclusion in its summary judgment order on this issue. (Doc. No. 64). Given the Eleventh Circuit's conclusion based on this evidence, the Court is constrained to deny GEICO's motion for judgment as a matter of law.

### III. Motion for New Trial

Next, GEICO moves for a new trial, arguing that this Court allowed unfairly prejudicial evidence and argument to be presented to the jury comparing GEICO's claims handling to the claims handling of Peak Insurance ("Peak"). Peak was Waters' insurance company whose policy provided property damage coverage.

Federal Rule of Civil Procedure 59(a)(1)(A) provides that after a jury trial, court may grant a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." In ruling on this motion, this Court must determine whether the verdict is against the clear weight of the evidence or whether it will result in a miscarriage of justice, even though there may be substantial evidence that would prevent the direction of a verdict. See Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984)(citation omitted). The Court cannot simply substitute its own judgment for that of the jury. See id.

A new trial based on an erroneous evidentiary ruling should not be granted unless GEICO demonstrates that the ruling produced a substantial prejudicial effect. See SEB S.A. v. Sunbeam Corp., 148 Fed. Appx. 774, 790 (11th Cir. 2005). As explained by one court:

> To determine if a party's substantial rights were affected, [the court] analyze[s] factors including the number of errors, the closeness of the factual disputes, the prejudicial effect of the evidence, the instructions given, and whether counsel intentionally elicited the evidence and focused on it during trial. In sum, [the court] may conclude that the party's substantial rights were not affected so long as [the court] can say, with fair assurance, . . . that the judgment was not substantially swayed by the error.

Id. (quotation marks and citations omitted).

GEICO points out that prior to trial, it filed a motion in limine to exclude evidence and argument that GEICO could have settled the bodily injury claim against Plaintiff based on the fact that the claimants settled their property damage claim against Waters with Peak.³ GEICO argued that the property damage claim and bodily injury claim are too different for the Peak settlement to have any relevance to the claimants' willingness to settle their bodily injury claim. The property damage claim was never alleged to be greater than the combination of Waters' and Plaintiff's property damage policy limits. However, the value of the bodily injury claim far exceeded Plaintiff's BI limits.

Plaintiff responded to the motion in limine that because the jurors must consider the totality of the circumstances, they should be allowed to consider the fact that Peak settled the property damage claim against Waters. Plaintiff also argued that the claimants' settlement of their property damage claim against Waters shows that they were willing to settle their bodily

---

³Waters did not have bodily injury insurance coverage; Peak only provided him with property damage coverage.

injury claim against Plaintiff.

The Court denied GEICO's motion, stating:

> While the Court agrees that the claimants' willingness to settle the property damage claim may be quite different from their willingness to settle their large bodily injury claims, the Court cannot say that evidence of the property damage settlement is completely irrelevant or unfairly prejudicial. GEICO is free to vigorously cross-examine witnesses about the difference between such claims at trial.

(Doc. No. 88).

Upon reflection, the Court should have either granted the motion in limine or put specific limitations on the evidence and argument about Peak's claims handling that was admissible. Due to this failure, Plaintiff asked questions and made arguments comparing GEICO and Peak's claims handling that unfairly prejudiced GEICO by confusing and distracting the jury from the issue before them—whether GEICO acted in bad faith. See Hilson v. GEICO General Ins. Co., 2013 WL 12156414, at *2 (M.D. Fla. Aug. 13, 2013)(granting motion in limine to exclude evidence of other insurer's claims handling, because such evidence may confuse the jury); Mendez v. Unitrin Direct Property & Cas. Ins. Co., 622 F. Supp.2d 1233, 1239 (M.D. Fla. 2007)(granting a new trial based, in part, on the admission of evidence regarding the claims handling of the uninsured motorist insurance company, because the evidence may have confused the jury and allowed them to find bad faith because the defendant acted differently than the other insurer); Johnson v. GEICO General Ins. Co., 318 Fed. Appx. 847, 850 (11th Cir. 2009)(rejecting as irrelevant the comparison of the claims handling of the bodily injury claim and the uninsured motorist claim); United Auto. Ins. Co. v. Estate of Levine ex rel. Howard, 87 So. 3d 782, 785 (Fla. 3d DCA)(finding no error in the lower court's exclusion of evidence that the insurance company settled some of the other car accident claimants' claims, because the

6

admission of such evidence brought the risk of distracting the jury by taking their focus away from the real issue—whether the insurance company acted in bad faith in failing to settle the plaintiff's claim). In addition, Plaintiff's witnesses often volunteered evidence regarding Peak's claim handling, even when the question being asked of them had nothing to do with Peak. The following are examples of the unfairly prejudicial comparisons of GEICO and Peak's claims handling that were presented to the jury.

### Plaintiff's Opening Statement

From the very beginning of this case, Plaintiff's counsel suggested that the jury should compare GEICO's claims handling and Peak's claims handling. In his opening statement, Plaintiff's counsel stated the following:

> You're going to see that a settlement offer was made by those individuals who represented the family of the lady who was deceased and the injured boy, not only to GEICO, but also to Mr. Waters' insurance company. Mr. Waters is the gentleman who was driving the white GMC. The case against Mr. Waters' insurance company, which was known as Peak and Century, was settled. The case against my client, Josh Moore, was not settled by GEICO. **And you're going to be able to compare the actions of those two insurance companies.**
>
> Why is that important? 'Cause really the reverse of what occurred, really the reverse of what should have occurred is what happened. The person who was primarily responsible, Mr. Waters, the jury in that underlying case found that he was 90 percent at fault for the accident. He got off scott free. His insurance company got the case settled. And this man right here, Josh Moore, his insurance company, GEICO, did not get the case settled against him, even though Mr. Waters was 90 percent at fault, this guy here was left holding the bag. He got a judgment against him for over $4 million.

(Doc. No. 147, p. 115)(emphasis added).

### Witness - Kecia Sirmans

When questioning Kecia Sirmans, the GEICO employee handling the GEICO claim,

Plaintiff introduced the demand letter Holden sent to Peak, and GEICO objected based on the relevancy of Peak's handling of the property damage claim against Waters. (Doc. No. 147, p. 209–12). The Court overruled GEICO's objection. (Doc. No. 147, p. 212). Thereafter, Plaintiff asked Sirmans questions based on a comparison of the demand letters Holden sent to GEICO and Peak. (Doc. No. 147, p. 213–15, 226–28).

### Witness - Gregory Kyser

Gregory Kyser, Krupp's husband and AO's stepfather, testified about his decision to send a demand letter to Peak insurance and that his claim against Waters was settled by Peak. (Doc. No. 147-1, p. 83–87). Plaintiff then asked Kyser, "Now after this happens, you settle with Waters, but you don't settle with the Moores, correct?" (Doc. No. 147-1, p. 89). Kyser responded affirmatively. (Doc. No. 147-1, p. 89).

On cross-examination, GEICO asked Kyser to agree that GEICO did not cause the car accident at issue, it simply insured the driver that caused the accident. (Doc. No. 147-1, p. 95). In response, Kyser volunteered that GEICO did not comply with the demand letter, but Peak did everything exactly as requested. (Doc. No. 147-1, p. 95). Thereafter, GEICO asked Kyser what was wrong with GECIO sending a proposed release and asking Holden to approve it, and Kyser responded, "I mean, Peak didn't have to do it. We sent [the demand letter] to two different insurance companies, one could do it correctly, one couldn't." (Doc. No. 147-1, p. 99). GEICO again asked Kyser what was wrong with GEICO submitting a proposed release, and Kyser responded as follows:

> All I know is [Holden] put everything in writing and told GEICO to do exactly what to do [sic] and Peak Insurance, the same thing, the same letters were sent out pretty much, and we had no problems with Peak, they did everything they needed to do.

(Doc. No. 147-1, p. 105).

### Witness - Lance Holden

When Plaintiff twice asked Holden about the demand letter he sent to GEICO, Holden responded in both instances by volunteering that he sent a demand letter to both GEICO and Peak. (Doc. No. 147-1, p. 123–25). When Plaintiff asked Holden whether his clients would have settled with GEICO had GEICO fully complied with the demand letter, Holden responded, "Yes . . . just like Mr. Waters . . . with Peak Insurance." (Doc. No. 147-1, p. 125). Plaintiff then questioned Holden about the demand letters that he sent to Peak and GEICO. (Doc. No. 147-1, p. 125, 127). When Plaintiff asked if Peak and GEICO complied with the demand letters, Holden responded as follows:

> Peak and its team of lawyers did what I had asked in my letter to protect my clients, and in particular, . . . the release . . . the release they gave me didn't put agents in there, it didn't list anyone other than their named insureds and they complied otherwise.
>
> In contrast, GEICO in the letter – and I'm paraphrasing – but in my letter to GEICO, I even do them the favor to tell them do not put anyone in your release other than your insureds, and when their release came in – and actually it trickled in, like it came in maybe by FAX and then overnight a day or two later, I couldn't believe my eyes and I'm still stunned. GEICO put the agents in there . . . .

(Doc. No. 147-1, p. 128–29).

Thereafter, Plaintiff attempted to introduce Peak's letter in response to Holden's demand letter, to which GEICO objected and the Court heard arguments at sidebar. (Doc. No. 147-131–32). At sidebar, the Court expressed its concern regarding the relevance of the letter, stating, "I'm assuming you want to [introduce] this just to say, okay, Peak did it right – Peak did it one way and you think that's the right way, and GEICO did it another way and you think that

is the wrong way. Is that the relevance of this?" (Doc. No. 147-1, p. 132). Plaintiff responded affirmatively, to which GEICO stated the following:

> I don't think that it has any relevance to whether GEICO acted in good faith or bad faith. I mean, we maintained our position and I understand that the Court has overruled parts of it, but that how one insurance company responds has nothing to do with whether the other one is in good faith or bad faith. I just think the documents is irrelevant and its prejudicial, and again, it's hearsay.

(Doc. No. 147-1, p. 133). The Court overruled the objection, stating:

> Okay. And that's – part of it is my concern with the fact that if Peak did it one way doesn't necessarily make that the right way and GEICO did it the wrong way. They did it one way and he accepted it. GEICO did it another way and he didn't. I mean, you're holding this up as being the right way when it's maybe one way and not necessarily the right way. It just concerns me. . . . I'll go ahead and let this letter in, but let's not put anymore Peak documents in.

(Doc. No. 147-1, p. 133–34). Thereafter, Plaintiff questioned Holden about Peak's response letter and about Peak's handling of the claim, including the fact that Peak hired two law firms to help it respond to Holden's demand letter. (Doc. No. 147-1, p. 134–35).

Plaintiff also asked Holden about the release that Peak submitted. (Doc. No. 147-1, p. 136–37). Then Plaintiff asked Holden why he objected to GEICO's proposed release that contained the word "agents," and Holden responded that if an insurance company makes misrepresentations about their insured's insurance coverage and the claimants released the insured and his agents, the claimants would be releasing any claims they had against the insurance company. (Doc. No. 147-1, p. 140–41). Plaintiff then asked why the demand letter required a sworn response regarding insurance coverage, and Holden responded, "I want someone telling me that under oath, let's make it clear, do what Peak and this [sic] lawyers did and we can settle the case." (Doc. No. 147-1, p. 141). Plaintiff asked Holden whether he sued

Waters, to which Holden responded that he did not because Peak had complied with the demand letter. (Doc. No. 147-1, p. 142).

On cross-examination, GEICO asked Holden why he did not return GEICO's three phone calls requesting a letter of representation. (Doc. No. 147-1, p. 166–67). In response, Holden stated that he sent a letter to both GEICO and Peak. (Doc. No. 147-1, p. 167). GEICO asked why Holden did not respond to GEICO's proposed release that GEICO faxed and mailed, and Holden responded that he responded to both GEICO and Peak. (Doc. No. 147-1, p. 167).

GEICO then asked Holden about his demand letter, to which Holden responded, "It was a bona fide settlement offer and Peak and its lawyers got it right." (Doc. No. 147-1, p. 173). GEICO asked Holden why he did not give more instructions about the release in his demand letter, to which Holden responded that he worded the demand letter to GEICO the same way he worded the demand letter that he sent to Peak. (Doc. No. 147-1, p. 184).

## Witness - Lisa Moore

Plaintiff's counsel asked Plaintiff's mother, Lisa Moore, about the underlying personal injury lawsuit that was filed in state court, and she responded that after the lawsuit was filed, she learned that "Lance" [Holden] had made similar demands to Waters' insurance company, Peak, and Peak complied, which meant that Waters was absolved of his financial obligation for the car accident. (Doc. No. 147-1, p. 209). Mrs. Moore went on to state the following:

> [W]e were very upset, we were very frustrated that we did not get the same from GEICO that this other guy got from his insurance company. We didn't understand where the balance – where it went. Why did we just not – why were we not the same? Why did we just not be [sic] absolved also? Why didn't it work?

(Doc. No. 147-1, p. 209–10).

On cross-examination, GEICO asked Mrs. Moore about GEICO's handling of the claim, to which she responded, "[W]hy did Peak settle, why was he released, why did that insurance company do what they were supposed to do and solve the problem or whatever was the issue." (Doc. No. 147-1, p. 231). Thereafter, the following exchange occurred:

> **Q.** How do you know [Peak] did what they were supposed to do?
> **A.** I knew that [Waters] was absolved from his – through the lawyers that they accepted his settlement and paid his –
> **Q.** Where did you get this idea [Peak] did what they were supposed to do? Where did that come from?
> **A.** I'm assuming that they complied and Lance accepted their settlement and took their monies and –
> **Q.** By "Lance", do you mean Mr. Holden?
> **A.** Yes, I'm sorry, Mr. Holden.
> **Q.** That's okay. So, you think that because Mr. Holden decided to accept the $10,000 property damage limits from a man who was judgment proof with no BI limits, that's an indication [Peak] did things right and GEICO did them wrong? Is that what you are saying?
> **A.** In my eyes, yes.

(Doc. No. 147-1, p. 231–32).

### Witness - Peter Knowe

Plaintiff asked Peter Knowe, Plaintiff's expert, about Peak's claims handling, including the fact that Peak hired two lawyers to respond to Holden's demand letter. (Doc. No. 147-2, p. 80–81). Knowe testified that Peak's hiring of two lawyers was consistent with insurance custom and practice. (Doc. No. 147-2, p. 81). Knowe went on to state that Holden gave the same settlement opportunity to both GEICO and Peak, to which GEICO objected (arguing that the claims handling of GEICO and Peak could not be compared to show bad faith), and the Court sustained GEICO's objection. (Doc. No. 147-2, p. 81). However, Plaintiff continued to question Knowe about Peak.

Plaintiff asked Knowe about the demand letter that Holden sent to Peak and whether Peak complied with the conditions set forth in the demand letter. (Doc. No. 147-2, p. 86–87). Knowe testified that Peak provided a drafted release, rather than a form release, in order to comply with the conditions set forth in the demand letter. (Doc. No. 147-2, p. 87–89).

During a break and outside the presence of the jury, the following exchange occurred between counsel and the Court:

> **MR. MCGUINN [Plaintiff's counsel]**: Several objections were made by GEICO's counsel on the issue of the Peak settlement.
> **THE COURT**: About the affidavits.
> \* \* \*
> **MR. MCGUINN**: . . . I just – I didn't want to make any inadvertent mistakes because I heard the Court make some comments about the Peak issue.
> **THE COURT**: Yeah, I think I had – I thought we had a conversation at sidebar where we were discussing whether certain of these exhibits should come in or not. The fact that Peak may have done it one way, the affidavits one way, I think we were discussing specifically the affidavits, and the fact that GEICO may have done it another way, is not evidence in and of itself of bad faith. So, I think – I mean, you could take maybe 10 insurance companies and they might do it in different ways. So, I think to compare the way one person did it and the way GEICO did it is really not fair, for want of a better word. Now, I think the fact – I certainly think that the evidence that the claim settled and GEICO's didn't settle is fair game because that's what happened. But as far as when you start comparing exactly, and even [though] I let it in about even the releases, it's a little bit of a concern.
> **MR. MCGUINN**: And that's why I was asking, Judge, I don't want to accidently go into that area because I know in the Court's motion in limine, the Court talked about that, they denied GEICO's motion in limine, and the Court said, the Court agrees the willingness to settle may be quite different, but at that time, the Court said the motion was denied and said GEICO is free to vigorously cross-examine witnesses about the difference between such claims at trial. So, I don't want to unwittingly violate this. I intended to ask him – here's what I was going to ask him. Do you have an opinion, based upon your review of the file, if Peak was provided with the same opportunity to settle in this case as GEICO, with the same type of

13

>opportunity to settle this case as GEICO? I wanted to ask him that and then, after he answers that, I wanted to ask him, is that significant to your overall opinions in this case? Why?
>**MR. YOUNG [GEICO's counsel]**: Your Honor, that's very problematic because I think, as the Court said at sidebar, you can't take these two things, compare them and say, well, they did it this way and he said that was okay, therefore, that's the standard of good faith. And I don't care how counsel dresses this up, that's what he is arguing, this is how it should have been done, you did it a different way, therefore, you're in bad faith. That it not the law, it's not appropriate, and I think, as Your Honor said, it's –
>**THE COURT**: I'll sustain the objection. I think certainly the facts are fair game because there's no doubt that Peak settled its claim and – against it and GEICO didn't. That's what happened. But when you start getting an expert to say because one was able to settle and GEICO was not able to settle, then that shows bad faith. I don't even think that's reasonable, so I would sustain.
>**MR. MCGUINN**: Okay, Judge. I just wanted to go ahead and do that so we didn't have to do that in front of the jury.
>**THE COURT**: Okay, thank you.

(Doc. No. 147-2, p. 92–95).

On cross-examination, GEICO asked Knowe whether it would be reasonable for an attorney to discuss his settlement demand with the insurance company and answer the insurance company's questions about the terms of the demand. (Doc. No. 147-2, p. 137–38). In response, Knowe responded, "It would be reasonable for GEICO to comply with the settlement opportunity presented, just like Peak Insurance did." (Doc. No. 147-2, p. 138).

On re-direct, Plaintiff asked Knowe whether there would have been anything wrong with GEICO reaching out to Peak and working with Peak to comply with Holden's demand letter. (Doc. No. 147-2, p. 158). Knowe responded, "[I]nsurance companies are responsible for releasing and performing their duties for the benefit of their insureds. If they think another insurance company may have more expertise or more understanding, nothing wrong with communicating with them." (Doc. No. 147-2, p. 158).

Plaintiff then asked if there would have been anything wrong with GEICO getting attorneys involved to help Kecia Sirmans, like Peak got attorneys involved for Waters. (Doc. No. 147-2, p. 158–59). GEICO objected to the comparison to Peak, and the Court sustained GEICO's objection. (Doc. No. 147-2, p. 159).

### **Plaintiff's Closing Argument**

In Plaintiff's closing argument, Plaintiff's counsel compared GEICO's claims handling to Peak's claims handling. Specifically, he stated the following:

> You talk about a lawyer. Remember some of the documents we put in there were the Peak documents. And you remember Mr. Knowe testified, it's not uncommon at all, when he was at Aetna, Travelers, and when he was at Infinity, for an insurance company to hire lawyers. You will see when you go back there in that letter, Plaintiff's Exhibit 18, Peak Insurance; whoever even heard of Peak Insurance? Peak Insurance Company hires two lawyers, no less than two lawyers, to get the deal done on behalf of Waters.

(Doc. No. 147-3, p. 46–47). GEICO objected to this argument, and the Court sustained GEICO's objection. (Doc. No. 147-3, p. 47).

Based on the above, it is clear that there was substantial evidence and argument presented to the jury comparing GEICO's claims handling to Peak's claims handling. This unfairly prejudiced GEICO, because the focus of the bad faith claim should have been on GEICO's conduct. Evidence of Peak's claims handling likely significantly distracted the jury from the proper focus in this case—GEICO's claims handling. The relevance of Peak's settlement of a property damage claim that did not appear to exceed Waters' and Plaintiff's property damage limits is marginal at best. However, the evidence that was introduced at trial regarding Peak's claims handling and the claimants' settlement with Peak was substantial and likely confused and misled the jury, leading them to believe that Peak handled the property damage claim correctly,

and GEICO's failure to handle the bodily injury claim the same way must be deemed bad faith. As such, this Court cannot say with fair assurance that the verdict was not substantially swayed by the Court's error in allowing this evidence and argument. Thus, allowing the bad faith verdict to stand when it may have been based in large part on this unfairly prejudicial evidence and argument would be a miscarriage of justice.

Accordingly, the Court grants GEICO's motion for a new trial. In doing so, the Court revisits it earlier ruling on GEICO's motion in limine regarding Peak's claims handling. Upon reconsideration, the Court grants GEICO's motion in limine to the extent that it requested that the Court exclude evidence and argument that it could have settled the bodily injury claim based on the fact that the claimants settled their property damage claim against Waters. During the retrial, the Court finds that no evidence regarding Peak should come in. The only evidence about Waters' insurance that may be introduced is that Waters did not have bodily injury insurance coverage. The only claim against Peak's insured, Waters, was a property damage claim, and the relevance of Peak's settlement of that claim is far outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) GEICO's Renewed Motion for Judgment as a Matter of Law (Doc. No. 158) is **DENIED**.

(2) GEICO's Motion for a New Trial (Doc. No. 157) is **GRANTED**.

(3) The Court hereby **VACATES** the December 9, 2016 judgment (Doc. No. 146) entered in this case.

(4)  Plaintiff's Motion for Attorneys' Fees (Doc. No. 149, 160) and Motion for Costs (Doc. No. 152) are **DENIED AS MOOT**.

(5)  GEICO's Motion to File a Reply (Doc. No. 161) is **DENIED**.

(6)  The Court reconsiders its ruling on GEICO's motion in limine (Doc. No. 72) to the extent that GEICO requested that the Court exclude evidence and argument that it could have settled the bodily injury claim based on the fact that the claimants settled their property damage claim against Waters. During the retrial, the Court finds that no evidence regarding Peak should come in.

(7)  The Court is able to retry this case during the following months of 2017: March, April, May, and July. The parties are directed to confer regarding their availability for trial during those months and to file a joint notice by ***February 28, 2017*** informing the Court as to the weeks in which both parties are available for trial. Thereafter, the Court will reset this case for trial.

**DONE AND ORDERED** at Tampa, Florida, this 13th day of February, 2017.

Copies to:
Counsel of Record

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge