[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13655

_____

D.C. No. 8:13-cv-01569-SCB-AEP

JOSHUA MOORE,

                                                        Plaintiff-Appellant,

versus

GEICO GENERAL INSURANCE COMPANY,

                                                        Defendant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(December 14, 2018)

Before MARCUS, NEWSOM, and EBEL,[*] Circuit Judges.

PER CURIAM:

Plaintiff Joshua Moore sued his automobile insurer, Defendant GEICO General Insurance Company ("GEICO"), alleging GEICO acted in bad faith in failing to settle a claim against Moore that eventually resulted in a multi-million-dollar verdict against Moore. After a jury found that GEICO had acted in bad faith, the district court granted GEICO a new trial, ruling that the court had erred in allowing evidence of how Peak Property and Casualty Company ("Peak"), another insurance company, had handled claims against its separate insured arising from the same car wreck. GEICO won the second trial. Moore challenges the district court's decision to grant a new trial. Having jurisdiction under 28 U.S.C. § 1291, we AFFIRM because the district court did not abuse its discretion in determining that it erred during the first trial in admitting evidence of the fact and process involved whereby Peak settled the claims against its insured. We also conclude that the district court did not abuse its discretion in determining that this evidentiary error warranted a second trial.

## I. BACKGROUND

This case stems from a tragic car wreck on a Florida highway. Richard

---

[*] The Honorable David M. Ebel, Senior United States Circuit Judge for the United States Court of Appeals for the Tenth Circuit, sitting by designation.

Waters, drunk and on opioids, cut off Moore, a twenty-one-year-old college student. Moore sped to catch up with Waters and when he did, the two exchanged hand gestures. Waters caused Moore to change lanes several times and then, with Moore in the left lane and perhaps on his cell phone, Waters twice swerved his vehicle into Moore's truck. The second time, Moore lost control, crossed the median, and ran head-on into Amy Krupp and her ten-year-old son ("victims"). After several weeks in the hospital, Krupp died. Her son lived, but suffered lasting brain injuries. Moore had internal injuries and a shattered right leg. Waters drove off but was eventually arrested and sent to prison.

Waters was insured by Peak, but he had only $10,000 in property damage coverage. Moore's parents insured the vehicle he was driving with GEICO, but their policy provided only bodily injury coverage of $10,000 per person/$20,000 per occurrence, and $10,000 in property damage coverage.[1]

The victims' family hired attorney Lance Holden to represent the victims, their family members, and Krupp's estate (collectively "claimants"). Just weeks after the car wreck, Holden made essentially identical settlement offers to both Waters' and Moore's insurers: If, among other things, the insurer, within twenty-one days, paid claimants the full amount of available coverage, submitted a

---

[1] Moore's expert witness testified that Florida only requires that drivers carry property damage liability coverage and not bodily injury liability coverage.

document for claimants to sign releasing only the insureds and provided affidavits from the insureds or their insurance agents swearing that there was no other available insurance, claimants would fully release the insureds from any further liability stemming from the accident. Waters' insurer, Peak, complied with these conditions and claimants settled their claims against him.

Moore's insurer, GEICO, tried to settle, but claimants found GEICO's efforts inadequate, primarily because (1) GEICO provided a form document that released, not only its insureds, but also "all officers, directors, agents or employees of the foregoing [named insureds], their heirs, executors, administrators, agents,[2] or assigns" (Jt. ex. 22 at 2), and (2) GEICO provided vague and incomprehensible affidavits from its insureds, the Moores, regarding the possible availability of additional insurance.[3] Rejecting GEICO's efforts to settle their bodily injury claims, claimants sued Moore in Florida state court, where a jury returned a verdict of approximately $45 million in claimants' favor. The jury further found, however, that Moore was responsible for only 10% of claimants' injuries. The state court, therefore, entered judgment against Moore for over $4 million, an amount equal to the percentage that he was at fault.

---

[2] Notably this release would have released any claims that claimants might have against GEICO itself, and Holden was adamant against that because of a prior experience he had had with another insurer in a different case.

[3] GEICO was later able to settle the property damage claim by paying claimants the $10,000 property damage coverage.

A month after the Florida court entered judgment against him, Moore initiated this federal litigation against GEICO, asserting a claim under Florida law that GEICO had acted in bad faith in failing to settle with claimants for his coverage limits when GEICO had the opportunity to do so. Under Florida law, an insurer owes its insured a duty to handle claims against the insured in good faith. See Harvey v. GEICO Gen. Ins. Co., —So.3d—, 2018 WL 4496566, at *4 (Fla. Sept. 20, 2018). This includes a fiduciary obligation to use good faith to protect its insured from a judgment that exceeds the limits of the insured's policy. See id. at *1. The Florida Supreme Court has explained that,

> [I]n handling the defense of claims against its insured, the insurer has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business.
>
> . . . .
>
> . . . The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

Id. at *4 (quoting Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla. 1980)). "The question of whether an insurer has acted in bad faith . . . is determined under the totality of the circumstances." Id. (quoting Berges v. Infinity Ins. Co., 896 So.2d 665, 680 (Fla. 2004)). "[T]he critical inquiry . . . is whether the insurer diligently, and with the same haste and precision as if it were in the

insured's shoes, worked on the insured's behalf to avoid an excess judgment." Id.

"The damages claimed by an insured in a bad faith case must be caused by the insurer's bad faith." Id. at *5 (internal quotation marks omitted). In light of that, GEICO alleged, as affirmative defenses in this case, "that, under the totality of the circumstances, GEICO did not have a realistic opportunity to settle the subject claim within the applicable policy limits," and "that the claimants . . . were unwilling to settle their claims against [Moore] within the applicable policy limits."[4] (Doc. 13 at 5 ¶¶ 27–28.) GEICO's defense, then, was two-fold: GEICO did not act in bad faith, but, even if it had, Moore's damages—primarily the multi-million-dollar state court judgment entered against him—were not caused by that bad faith because claimants had no intention of ever settling their claims against Moore for the small amount of insurance coverage he had with GEICO.

Prior to trial, GEICO filed a motion in limine, requesting under Fed. R. Evid. 403 that the district court prohibit Moore from (1) "presenting evidence, testimony, or argument that the underlying claim 'could' have been settled, that [claimants were] willing to settle, or that GEICO had an opportunity to settle the

---

[4] Technically, these assertions are not affirmative defenses, as it is the plaintiff's burden in a bad faith claim to prove that the substantive claim against him or her could have been settled had the insurance company acted diligently and reasonably. See Berges, 896 So.2d at 679. Nevertheless, because GEICO had pled this as an affirmative defense, the district court submitted it to the jury as an affirmative defense. In addition, the court instructed jurors that it was Moore's obligation to prove that the "insurance company . . . could have and should have" settled the claims. (Doc. 140 at 9.)

underlying claim <u>because</u> [claimants] settled with PEAK"; and (2) "presenting evidence, testimony, or argument relating to PEAK's handling of a claim against Waters."  (Doc. 72 at 7 (emphasis added).)  The district court denied GEICO's motion, ruling in full:

> While the Court agrees that the claimants' willingness to settle the property damage claim may be quite different from their willingness to settle their large bodily injury claims, the Court cannot say that evidence of the property damage settlement is completely irrelevant or unfairly prejudicial.  GEICO is free to vigorously cross-examine witnesses about the difference between such claims at trial.

(Doc. 88 at 8.)[5]

During trial, Moore frequently put on evidence and made argument that Peak was able to settle claimants' property damage claim against its client for the property limits of that policy.  Ultimately, the jury found that GEICO had acted in bad faith.  After the verdict, however, the district court granted GEICO's Fed. R. Civ. P. 59(a) motion for a new trial, ruling that the court had erred in permitting the jury to hear evidence of claimants' settlement with the other insurer, Peak, and the manner in which Peak successfully processed the claim against its client.  In granting a new trial, the district court ruled: "During the retrial, the Court finds that no evidence regarding Peak should come in."  (Doc. 165 at 16.)  The matter thus proceeded to a second jury trial, where GEICO prevailed.  Moore now appeals,

---

[5] Everyone proceeded to trial with the understanding that evidence regarding Peak's settlement and its claims handling was admissible.

7

arguing only that the district court abused its discretion in granting GEICO's motion for a new trial which vacated the first jury verdict Moore had obtained for more than $4 million dollars.

## II. DISCUSSION

In granting GEICO a new trial, the district court made two determinations, 1) that the court erred under Fed. R. Evid. 403 in allowing evidence of claimants' settlement efforts with Peak, and 2) that under Fed R. Civ. P. 59(a) the evidentiary error warranted a new trial. Moore challenges both of those determinations, each of which is committed to the trial court's discretion.

**A. The district court did not abuse its discretion in determining that evidence of claimants' settlement with Peak should have been excluded under Fed. R. Evid. 403[6]**

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." A Rule 403 determination is committed to the district court's discretion. See United States v. Dixon, 901 F.3d 1322, 1345 (11th Cir. 2018), petition for cert. filed, No. 18-6917 (U.S. Nov. 29, 2018). "Inherent in this abuse of discretion standard is the firm

---

[6] The district court did not expressly invoke Rule 403 when it granted the new trial. But the district court's reasons for granting the new trial appear clearly to employ a Rule 403 analysis, and GEICO premised its pretrial motion in limine on Rule 403.

8

recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury." Tran v. Toyota Motor Corp., 420 F.3d 1310, 1315 (11th Cir. 2005) (internal quotation marks, alteration omitted).

Evidence of claimants' settlement with Peak certainly had some probative value. The manner in which Peak handled the claims against its insured was probative, at a minimum, to counter GEICO's evidence that it could not understand claimants' settlement conditions, which were the same for both insurers. Evidence of Peak's claims handling also bolstered Moore's expert's testimony as to the insurance industry's custom and practice in handling claims of catastrophic injuries. Moreover, the fact that claimants settled with Peak was relevant to counter GEICO's argument that claimants never intended to settle their claims for the minimal insurance coverage available.

On the other hand, the probative value of this evidence was diminished because the claim Peak settled was not identical nor even substantially similar to the claim GEICO was handling. Peak's insured had only property damage coverage and, between that coverage and the property damage coverage that GEICO provided its insured Moore, there was no likelihood that claimants' property damage claims would exceed that available coverage. By contrast,

GEICO provided its insured, Moore, not only property damage coverage, but also bodily injury coverage. The amount of that bodily injury coverage, however, was minimal. Faced with catastrophic bodily injury claims, there was a clear possibility of a bodily injury judgment against Moore that would far exceed his coverage. The claims Peak settled, then, were significantly different from the claims GEICO was handling.

Moore argues that the insurance claims involving Peak and GEICO were analogous because Peak had an obligation to try to settle the bodily injury claims as well as the property damage claims, even though Peak's insurance policy provided only property damage coverage. Moore cites to a Florida Court of Appeals case, Allstate Indemnity Co. v. Oser, 893 So.2d 675, 677 & n.1 (Fla. 1st Dist. Ct. App. 2005). This argument directly contradicts Moore's expert's testimony that Peak had no "duty of good faith to settle [claimants'] bodily injury claims made against" Waters. (Doc. 147-2 at 151.) Further, and more importantly, Oser is clearly distinguishable because in Oser the property insurance carrier had arguably voluntarily assumed some responsibility for settling the bodily injury claims, whereas Peak never undertook any action to defend against or to assume any responsibility for the bodily injury claims.

Continuing then to the balancing of probative value against unfair prejudice, required by Rule 403, the district court did not abuse its discretion in determining

that the probative value of Peak's settlement was outweighed by "the danger of . . . unfair prejudice" to GEICO and of "confusing the issues [and] misleading the jury." Fed. R. Evid. 403. In particular, there was a danger that jurors would rely on evidence of the manner in which Peak handled the claims against its insured to find that any other manner of claims-handling (such as the approach employed by GEICO) amounted to bad faith. There was a risk that jurors would find that, because Peak hired attorneys to draft a release that met claimants' settlement demand, the fact that GEICO did not hire attorneys to draft such a release amounted to bad-faith claims-handling. This danger was present, even though, as Moore argues, he never expressly argued to the jury that GEICO acted in bad faith by handling the claim against Moore differently than Peak handled the claim against its insured.

Moore next argues that evidence of Peak's settlement of the claims against its client was not prejudicial because there was independent evidence that GEICO acted in bad faith, apart from evidence of how Peak was able to settle the claim against its insured. Although there certainly was independent evidence that GEICO may have acted in bad faith in the way it processed the claimant's claim against its insured (Moore), that evidence was not so overwhelming that we can conclude that the introduction of how Peak handled the claim against its insured had no prejudicial effect on the jury's deliberations. Thus, we cannot conclude that

11

the district court abused its discretion in determining that the probative value of the Peak evidence was substantially outweighed by a danger that the evidence would unfairly prejudice GEICO, confuse the issues or mislead jurors. See United Auto. Ins. Co. v. Estate of Levine, 87 So.3d 782, 785–86 (Fla. 3d Dist. Ct. App. 2011) (holding, in addressing claim that insurer acted in bad faith in failing to settle a claim, that trial court did not abuse its discretion in excluding evidence that insurer promptly settled two other claims resulting from same accident, after weighing the probative value of evidence of those other settlements against its unfair prejudicial impact on jury); see also id. (stating that conducting "a trial within a trial" on the insurer's handling of other claims ran risk of distracting jury from its proper focus on the insurer's handling of the claim at issue in the bad-faith case).[7]

**B. The district court did not abuse its discretion in determining that its evidentiary error warranted a new trial under Fed. R. Civ. P. 59(a)**

Having upheld the district court's ruling that it committed error under Federal Rule of Evidence 403, the question remains whether the district court erred in concluding that that error warranted a new trial under Rule 59.

---

[7] In a diversity action, federal law governs procedural issues, and "rules of procedure encompass rules of evidence, and therefore, the Federal Rules of Evidence, not state evidentiary rules, apply to evidentiary disputes in a federal diversity action." ML Healthcare Servs., LLC v. Publix Super Markets, Inc., 881 F.3d 1293, 1299 (11th Cir. 2018) (internal quotation marks, alterations omitted). So, although Levine conducted the same weighing that federal Rule 403 requires, Levine is not directly controlling except to the extent that Florida substantive law informs a court's determination of the probative value of the evidence to prove a substantive Florida bad-faith claim.

We "review the grant of a new trial pursuant to Rule 59 for abuse of discretion." Aronowitz v. Health-Chem Corp., 513 F.3d 1229, 1242 (11th Cir. 2008). Because here we are reviewing the district court's decision to grant a new trial in order to correct its own evidentiary error, rather than because the district court found that the jury's verdict was against the weight of the evidence, we afford the district court "wide discretion" in ordering a new trial. Williams v. City of Valdosta, 689 F.2d 964, 973–75 & 974 n.8 (11th Cir. 1982); see also Aronowitz, 513 F.3d at 1242.

"[N]o error in admitting . . . evidence . . . is ground for granting a new trial" unless the error "affect[ed] any party's substantial rights." Fed. R. Civ. P. 61; see also United States v. Jeri, 869 F.3d 1247, 1259 (11th Cir.), cert. denied, 138 S. Ct. 529 (2017). The district court acknowledged that rule and further recognized factors relevant to determining whether admission of Peak's settlement affected GEICO's substantial rights. Those factors include "the number of errors, the closeness of the factual disputes, the prejudicial effect of the evidence, the instructions given, and whether counsel intentionally elicited the evidence and focused on it during the trial." Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp., 37 F.3d 1460, 1465 (11th Cir. 1994). Although we might have come out otherwise if reviewing this matter de novo, we cannot say that, after considering those factors, the district court abused its discretion in concluding a

new trial was warranted. The factual disputes in this case—particularly the questions of whether GEICO handled the claim against Moore in bad faith and whether claimants would have ever settled their bodily injury claims against Moore for the minimal amount of insurance coverage he had—were certainly close questions. Furthermore, these close questions went to the critical issues that the jury had to decide. See Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1162 (11th Cir. 2004) (considering this fact in deciding whether a new trial was warranted). The district court's error in admitting evidence of Peak's settlement went directly to these determinative issues. During the initial trial, the trial court never instructed the jury to limit its consideration of the Peak-settlement evidence. Thus, here we cannot find an abuse of discretion when the district court ordered a new trial under Rule 59 because of its prior evidentiary error in the first trial.

### III. CONCLUSION

Having found no abuse of discretion, we AFFIRM the district court's decision to grant the new trial.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 14, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 17-13655-BB
Case Style: Joshua Moore v. GEICO General Insurance Co.
District Court Docket No: 8:13-cv-01569-SCB-AEP

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Team 2 Vacant, BB at 404-335-6130.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs